## THE QUEEN *vs.* JIM KAKA.

APPEAL FROM POLICE JUSTICE OF HONOLULU.

HEARING, AUGUST 27, 1891. DECISION, SEPTEMBER 3, 1891.

JUDD, C.J., BICKERTON AND DOLE, JJ. McCULLY, J., ABSENT.

The collecting by defendant of marked words, receiving stakes from play-
ers in a lottery or gambling game called " Che Fa," and returning to
the player his prize, if he won, is sufficient evidence that he assisted in
managing or conducting a lottery, without further proof that such a
game was in existence, or that defendant solicited players to engage
in it.

### OPINION OF THE COUT, BY JUDD, C.J.

On the 7th July the defendant was charged in the Police
Court of Honolulu with violating Chapter 41, Section 3, of the
Laws of 1886, in Honolulu, during two months last past, by
assisting in managing or conducting a lottery, to wit, a "che
fa" game.

He was found guilty, was sentenced and appealed to this
Court in banco on the point of law that the evidence is insuffi-
cient to sustain the conviction, there being no proof that a lot-
tery or banking game was in existence which the defendant
assisted in managing or carrying on.

Mr. Neumann, of counsel for defendant, urges that in order
to convict the defendant of assisting in the management of a
gambling game, it must be shown either that such a game was
being carried on or that defendant solicited others to take
chances in such a game, which would be evidence of the exis-
tence of such a game.

The evidence sent up is as follows :

### EVIDENCE.

Defendant collects money and tickets in Honolulu, has been
doing it every day for past month ; I gave him my ticket on

June 27, 1891, with 40 cents; gave him none before or since; I won on one word, won $3, got the $3 from defendant. I gave him my ticket about 1 P. M., got the money in the evening at Mary Akoni's place, from Kaka; many others were present; Geo. Sea, Lui Self, were there; Moses Keumi was inside the house. (Wm. Coggeshall).

I met defendant the week before the last in June; I had heard of a che fa game, so I told defendant to take my ticket and put it in the bank. The ticket I gave him had something to do with che fa; I am not familiar with the game; I did not give defendant any ticket; gave him 20 cents to play, because I knew he was acquainted with the game. (Ikake).

I took defendant a che fa ticket last Thursday and gave him 30 cents; I don't know what he did with them. I wrote poolio, mookalani and popoki on the ticket; I lost. This is the only time I played che fa; I did not see defendant after he took the money and ticket. (Kalilikane).

Defendant has been dotting words lately for che fa; if I have 5 cents I get $1.50; if I hit the word that I dot, I get $1.50. I write a word on a paper, and put 5 cents on it; I give the paper to a man; if I hit the word I get $1.50, if not, I lose; I have played this game, not very often; when I get 5 cents I dot words; I have done it about five times in the past two months; I wrote my ticket myself, gave it to defendant sometimes; I gave him a word on the day Moses was arrested; I have won 5 cents, but have usually lost; I have won $1.50 on a 5 cent investment, got the money from defendant; don't know where he got it. (Kailihaona).

In addition to the foregoing, counsel agree that the following testimony was given by D. Kaapa in the Court below:

"I know the game of che fa, it is a game of 36 words, it is a banking game; sometimes 1, 2, 3 or 4 words are held out by the bank, leaving the player the balance; the person who guesses the right word wins; the winner gets in ratio of 30 to 1; if a man puts in 5 cents he wins $1.50; a riddle has to be distributed amongst the players; the man who guesses the word gets the prize."

It was also stipulated by counsel that all witnesses were asked if defendant ever solicited them to purchase chances, and that they testified he did not.

### By the Court.

We think the evidence is plenary on which to convict defendant. The witnesses say that for some time past the defendant has taken "tickets," or rather, the words chosen and marked by the player, and the entrance fees or bets from the public indiscriminately, and after a while he returned to the player the money, if the word had won.

This is assisting in managing or conducting the lottery. Without the defendant's participation or of some one to collect the words chosen by those who wished to engage in this gambling and take money they hazarded, no such game could be carried on. Nothing remains to be done by the principals in the game of che fa, except to propound the riddle and put out the 36 words from which the winning word is to be guessed by the players, and, when the numbers are in, to announce the result. The principals may not see or meet the players at all. The runner or agent, such as the defendant is, deals with the public. The act of receiving the marked word from the player and the amount staked by him, affords evidence that such a game is in existence, either organized and conducted by others or by himself. And these inculpatory facts would put upon the defendant the burden of proving that no such game existed, in which case he would either have committed a gross cheat in taking money on the false pretence that the stakes were to be played at a che fa game, or if he should show it was his own game he would be discharged of the offense of assisting and be held as a principal.

It was not necessary for the prosecution to show that the defendant solicited others to mark words and to put up their money on these marked words. The evidence shows that the witnesses knew what his occupation was in this respect and acted accordingly without solicitation on his part. The act speaks for itself and is the same whether he solicited the stake or not.

9

No word need be spoken. What necessity for solicitation if the would-be player knows all that the runner could tell him ? Moreover, the exhibition by the defendant to the player of the list of 36 words put out by the managers of the game is sufficient evidence of solicitation without a word being spoken.

We think the conviction should stand. Appeal dismissed.

*Attorney-General*, for prosecution.

*P. Neumann, Ashford & Ashford, Huntsman & Nawahi, and J. L. Kaulukou*, for defendant.